1              IN THE UNITED STATES DISTRICT COURT

2                FOR THE DISTRICT OF OREGON

3  UNITED STATES OF AMERICA,     )
                          )  Case No. 3:14-CR-0267-6-BR
4         Plaintiff,     )
                          )
5  v.                   )  March 30, 2015
                          )
6  MORGAN ELIZABETH GODVIN,     )
                          )
7         Defendant.     )
  _____)  Portland, Oregon
8

9                TRANSCRIPT OF PROCEEDINGS

10                (Change of Plea)

11     BEFORE THE HONORABLE ANNA J. BROWN, SENIOR JUDGE

12

13  APPEARANCES:
    FOR THE PLAINTIFF:      LEAH BOLSTAD
14                     Assistant U.S. Attorney
                     U.S. Attorney's Office
15                     1000 SW Third Avenue
                     Portland, OR  97204
16                     (503)727-1000

17

    FOR THE DEFENDANT:      RUSSELL BARNETT
18                     Attorney at Law
                     1500 SW 1st Avenue, #780
19                     Portland, OR  97201
                     (503)946-8000
20

21

    COURT REPORTER:         AMANDA M. LeGORE
22                     RDR, CRR, CRC, FCRR, OCE
                     U.S. District Court
23                     333 West Broadway, Suite 420
                     San Diego, CA 92101
24                     amanda_legore@casd.uscourts.gov

25

```
 1                    (March 30, 2015; 9:08 a.m.)

 2

 3                    P R O C E E D I N G S

 4

 5            THE COURT:  Good morning, everyone.

 6            MS. BOLSTAD:  Good morning, your Honor.  Leah Bolstad

 7   for the United States.

 8            This is the matter of the United States versus Morgan

 9   Godvin, Case No. 14-267.  She is the sixth defendant on the

10   Indictment.

11            Ms. Godvin is here, and she's represented by counsel,

12   Mr. Barnett.

13            We're here for Ms. Godvin's change of plea to Count 3

14   of the Indictment.

15            THE COURT:  Thank you.  Would you summarize, please,

16   the key terms of that agreement.

17            MS. BOLSTAD:  Yes, your Honor.

18            The defendant is agreeing to plead guilty to Count 3,

19   which charges conspiracy to distribute heroin in a quantity

20   exceeding 100 grams.

21            That's a five-year mandatory minimum, statutory max

22   of 40 years, a fine of $5 million maximum, and a $100 fee

23   assessment.

24            By entering this plea Ms. Godvin is agreeing to pay

25   restitution to the designated family members of victim J.D. for
```

1    expenses related to his overdose death.

2          The Government will dismiss remaining charges against

3    Ms. Godvin.

4          Relevant conduct, in paragraph 7, the parties have

5    agreed Ms. Godvin's relevant conduct exceeds 100 grams of

6    heroin, for a base offense level of 24.  But we've also agreed

7    that because this defendant distributed heroin that resulted in

8    an overdose death, we have a trigger Base Offense Level of 38

9    prior to adjustments.

10          The Government is agreeing to three levels of

11    acceptance of responsibility plus a two-level decrease because

12    this defendant resolved her case in an early manner.

13          Paragraph 10 discusses other adjustments or

14    departures that are applicable.

15          The parties have agreed the defendant gets a minor

16    role, a three-level reduction, a two-level dangerous weapon

17    enhancement, and we agree she is not safety valve eligible.

18          The guideline calculation that the parties anticipate

19    was described in paragraph 11.  It's a 38, plus 2 for dangerous

20    weapon, minus 3 for minor role, minus 3 for acceptance, minus 2

21    for early acceptance.  And then the Government's recommendation

22    is there at the end of paragraph 11, where if the defendant

23    resolves early, the Government will be recommending a sentence

24    that's below guidelines of 60 months imprisonment.  Followed by

25    four years of supervised release and a $100 fee assessment.

1          THE COURT:  She's what criminal history category at
2   the moment?

3          MS. BOLSTAD:  The parties anticipate that she -- just
4   a moment.  The parties anticipate CHC II based on three points.
5   She has a 2013 possession case.

6          THE COURT:  So a range, before your proposed
7   adjustment, of 135 to 168?

8          MS. BOLSTAD:  There's also a Chapter 5 consideration
9   in play.  The final calculation of what that will be I'll have
10  at sentencing.

11         THE COURT:  All right.  Thank you, Ms. Bolstad.

12         Mr. Barnett, good morning.

13         MR. BARNETT:  Good morning, your Honor.  Russell
14  Barnett, B-A-R-N-E-T-T.

15         THE COURT:  What would you like to add to that
16  summary?

17         MR. BARNETT:  I would like to just acknowledge that
18  Ms. Bolstad was completely accurate.  Not that I'm surprised.
19  But that is the sum and body of the negotiations between the
20  parties.  As she indicated, there are still some potential
21  considerations in play.  We're continuing to work on those.

22         THE COURT:  But not any opportunity to go below the
23  mandatory minimum?

24         MS. BOLSTAD:  Through 5K it is possible, your Honor.

25         THE COURT:  Well, since you were up to 32, I did not

1    know whether you were anticipating that extent of an

2    adjustment.

3              135 is the low end at 32, Category II.

4              MS. BOLSTAD:  That is correct, your Honor.

5              THE COURT:  And to go below the mandatory minimum

6    is -- I'm just wanting to be sure I know what ranges you're

7    talking about.

8              We're -- we're looking at -- seven levels takes you

9    to 63 at the low end.

10             MS. BOLSTAD:  That's correct, your Honor.

11             This agreement, though -- the plea agreement does not

12   forbid the defense from asking below.

13             THE COURT:  If there's a legal basis to go there?

14             MS. BOLSTAD:  Yes, your Honor.

15             MR. BARNETT:  That's correct.

16             THE COURT:  I understand that.  Thank you.  That's

17   helpful.

18             What else, Mr. Barnett, did you want to add?

19             MR. BARNETT:  Nothing, your Honor, only -- other than

20   to make the record that we have tendered to the Court the plea

21   petition.

22             I've had the opportunity to discuss it with

23   Ms. Godvin several times.  We met as recently as yesterday,

24   confidentially, in the visiting area of the MCIJ.  We've been

25   through the plea petition again.  That's when she formally

1    signed it.

2            THE COURT:   Okay.

3            MR. BARNETT:   Throughout the course of the

4    negotiations of this, as well as the preparation of the plea

5    petition in its various iterations that we have discussed,

6    Ms. Godvin has had a number of questions.   They've been of an

7    appropriate sophistication and contextual appropriateness to

8    suggest to me a knowing and intelligent act on her part.

9            She has been actively involved in the negotiations of

10   this case, and I am comfortable representing to the Court that

11   I have reviewed this with her.   We have discussed it, and I

12   believe that it is a -- a knowing and voluntary act on her part

13   and it would be appropriate for the Court to consider her plea

14   at this time.

15           THE COURT:   Thank you.

16           The restitution figure, is that known?

17           MS. BOLSTAD:   Not at this time, your Honor.

18           THE COURT:   Do we have a range?

19           MS. BOLSTAD:   I don't.

20           THE COURT:   None at all.

21           Okay.   And, finally, the co-defendants.   You said

22   six, and somehow in my mind I had five I was tracking.

23           Mr. Rosa was arraigned recently.   Mr. Arcila

24   (phonetic) is seeking new counsel.

25           Mr. Sandoval is set for trial.

1          MS. BOLSTAD:  Placido is a fugitive.  He was released

2     on pretrial --

3          THE COURT:  Isn't that five?

4          Maybe my math is wrong.  Oh, Mr. Baker.

5          MS. BOLSTAD:  Yeah.

6          THE COURT:  He was the one I wasn't counting, and

7     he's already resolved.

8          Thank you.  I appreciate that.

9          So, Ms. Godvin, good morning.

10          THE DEFENDANT:  Good morning, your Honor.

11          THE COURT:  I have your petition to plead guilty and

12     this plea agreement the lawyers have been discussing.  Before

13     I'm allowed to let you plead guilty, I personally need to speak

14     with you long enough that I can be sure, based on your answers

15     to me that today you're thinking clearly, that you're acting

16     voluntarily, that you know what you're doing, you know what the

17     consequences are, you know what the rights you are -- that you

18     have but that you're giving up.  And, finally, I can only let

19     you plead guilty if you actually -- unless you're actually

20     guilty, you actually committed the crime.

21          So I'll be asking you a number of questions with the

22     goal of allowing you to plead guilty, as I understand you want

23     to do.

24          I want to remind you, before we begin, that right now

25     you still have all of your rights, including your right to

1   remain silent.  Meaning your right not to answer the questions

2   I'm about to ask you.  On the other hand, I'm not allowed to

3   let you plead guilty unless you do, and I can make those

4   findings.

5           I point this out because the choice is yours.  Not

6   Mr. Barnett's or the prosecutors.  And if at any point you

7   change your mind and just don't want to answer anymore

8   questions, just say so and I'll stop asking them.

9           Do you understand?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  I'm going to be placing you under oath.

12  Do you know what that means?

13          THE DEFENDANT:  I do.

14          THE COURT:  So your statements must be true, and I'll

15  be relying on them.  And, of course, it's yet another crime if

16  you lie knowingly about a material fact under oath.

17          And, finally, the court reporter is taking down

18  everything we say.  I point that out because that's -- that's a

19  record forever, basically.  The record exists.  If ever there's

20  a reason that your statements to me would be needed in any

21  proceeding, they'll exist.

22          Do you understand?

23          THE DEFENDANT:  Yes, I do.

24          THE COURT:  Thank you.

25          Please raise your right hand.

1              (Defendant sworn.)

2              THE DEFENDANT:  I do.

3              THE COURT:  Thank you.

4              Tell me your full name, please.

5              THE DEFENDANT:  Morgan Elizabeth Godvin.

6              THE COURT:  And are you the person of that same name

7    who is the defendant in this case?

8              THE DEFENDANT:  I am.

9              THE COURT:  Your papers say you're 25 years old.

10   You've completed high school and some education after high

11   school.  That's all true?

12             THE DEFENDANT:  That's correct.

13             THE COURT:  I can see Mr. Barnett is your lawyer.

14   The paper says you've discussed your case fully with him, and

15   he's emphasized that.

16             I want to be sure, from your perspective, you've had

17   enough time with Mr. Barnett to come to a place where you're

18   resolved that the decision you're about to make is one in your

19   own best interest.

20             Have you had enough time with him?

21             THE DEFENDANT:  Yes, your Honor.  He has been with me

22   a couple of times regarding this matter.

23             THE COURT:  And that's been enough time for you?

24             THE DEFENDANT:  Yes.  He's answered all of my

25   relentless questions.

1        THE COURT:  Good.  That was going to be my next

2    question.  I wanted to be sure you actually did ask him

3    questions and have considered options other than pleading

4    guilty and at least in theory what you might be facing if you

5    did not plead guilty and went to trial and were found guilty on

6    one or more charges.

7        Did you actually go through that theoretical

8    analysis?

9        THE DEFENDANT:  Yes.  He has informed me what I would

10   be facing if I was to be found guilty.

11       THE COURT:  Have you considered the Government's

12   evidence that they say they have against you, as opposed to

13   your right to be presumed innocent, to go to trial, and to see

14   if a jury would believe the Government's witnesses and evidence

15   beyond a reasonable doubt?  Have you weighed and evaluated

16   those options?

17       THE DEFENDANT:  Yes, I have weighed my options.

18       MR. BARNETT:  Your Honor, if I may just be clear for

19   the record, I have visited her more than a couple of times.

20       THE DEFENDANT:  I just meant specifically since this

21   plea --

22       THE COURT:  You've talked about the plea agreement

23   twice in person?

24       THE DEFENDANT:  Three times in person.

25       THE COURT:  All right.  And then you've talked with

1  him more than that?

2        THE DEFENDANT:  Many more times than that.  Sorry for

3  the confusion.

4        THE COURT:  Well, that's good.  Thank you for

5  clarifying that.  You've had enough time, then, in the end to

6  take advantage of your constitutional right to counsel?

7        THE DEFENDANT:  I've had more than ample time.

8        THE COURT:  And do you believe that pleading guilty

9  on the terms negotiated is, in the end, something that is in

10  your own best interest?

11        THE DEFENDANT:  Yes, your Honor.

12        THE COURT:  Are you satisfied with Mr. Barnett's

13  advice and services?

14        THE DEFENDANT:  Very much so.

15        THE COURT:  Are you thinking clearly today?

16        THE DEFENDANT:  I am.

17        THE COURT:  Is anything going on with you physically,

18  mentally, emotionally -- anything at all --

19        THE DEFENDANT:  I will say no.

20        THE COURT:  -- that's distracting you or in any way

21  might be interfering with your ability to make a good decision?

22        THE DEFENDANT:  No.

23        THE COURT:  Is anyone putting any pressure on you to

24  plead guilty when you don't want to?

25        THE DEFENDANT:  No.

1    THE COURT:  Is the decision to plead guilty your own

2  personal and voluntary decision?

3    THE DEFENDANT:  Yes.

4    THE COURT:  Do you have a felony conviction on your

5  record yet?

6    THE DEFENDANT:  I do for possession of heroin.

7    THE COURT:  Okay.  You'll be pleading guilty to a

8  crime that is a felony, and so it will be added to your

9  criminal history.  Meaning, in the future, if ever you're

10  convicted of another crime, today's conviction will increase

11  your score and, in all likelihood, make any penalty for future

12  conduct more serious than it would be if you were, for example,

13  a first-time offender.

14    Do you understand that?

15    THE DEFENDANT:  Yes.

16    THE COURT:  And with even one felony conviction on

17  your record, you've lost certain civil rights:  The right to

18  vote, the right to hold public office, the right to possess a

19  firearm, the right to possess ammunition.  Persons with felony

20  convictions are prohibited persons with respect to ammunition

21  and guns under federal law.

22    Do you understand?

23    THE DEFENDANT:  Yes, your Honor.

24    THE COURT:  It means even holding a gun is a new

25  felony crime for you.  Do you understand?

1          THE DEFENDANT:  Yes, I do.

2          THE COURT:  And with a felony conviction on your

3    record, you might not qualify for certain jobs or occupations.

4    Certain employers wouldn't hire you.  You might not qualify for

5    certain benefits.

6          If you were not a citizen of the United States, you

7    could be deported because of this kind of conviction.

8          Do you understand?

9          THE DEFENDANT:  Yes, I do.

10          THE COURT:  Thank you.

11          (Coughing.)  Excuse me.

12          I want to talk about the rights you have and that you

13    are giving up today.  And I want to isolate one of those rights

14    because you're not giving it up, and that's the right to

15    counsel.  So let me start there.

16          Mr. Barnett is here to speak for you, to make all the

17    presentations that would need to be made in a court proceeding.

18    If you went to trial, he would be the one challenging the

19    Government's witnesses against you, standing in front of the

20    jury, trying to point out to them where they might find

21    reasonable doubt.

22          As he has, to now, he's been negotiating and taking

23    your cause to the prosecutor.  And he will be continuing to

24    advocate for you, all the way through to the sentencing

25    decision.

```
 1              So that's a right you have but you're not giving up.
 2              Do you understand?
 3              THE DEFENDANT:  I do.
 4              THE COURT:  The other rights I'm about to explain you
 5    are giving up today if you do plead guilty, so let's take those
 6    in order.
 7              When the Government first accused you of this crime
 8    and the other charges, it took on the burden to prove you
 9    guilty beyond any reasonable doubt, and it retains that burden,
10    until you give it up.
11              You, on the other hand, became protected by the
12    constitutional presumption of innocence.  And as you stand here
13    now, you are still presumed innocent of any wrongdoing.
14              Really, there are only two ways that changes that
15    presumption of innocence.  One is if you went ahead to go to
16    trial and the Government succeeded in overcoming the
17    presumption by proving you guilty in a public trial by jury
18    where every one of the 12 jurors was convinced beyond a
19    reasonable doubt that every one of the material elements of a
20    charge was true beyond a reasonable doubt, that's one way to
21    lose the presumption.  The Government literally overcomes it
22    with evidence and a jury agrees unanimously.
23              Do you understand?
24              THE DEFENDANT:  Yes, I do.
25              THE COURT:  The only other way is the way you're
```

1    proceeding; to voluntarily give it up.  And if you do, then I

2    find you guilty, there's not a trial.  The case moves from

3    today, then, to the next step, which will be sentencing.

4              Do you understand?

5              THE DEFENDANT:  Yes, I do.

6              THE COURT:  If you were not pleading guilty, then

7    your other rights would come into play.

8              That right to a public trial by jury, where you have

9    the right to confront the Government's witnesses against you

10   and the Government's evidence against you.  Our procedures

11   permit and would require that you know who the witnesses are,

12   that you know what the Government's evidence is, so you would

13   have an opportunity through counsel to confront and challenge

14   them in the presence of the jury.

15             The idea being that just because a person has been

16   called doesn't mean a jury will believe everything that witness

17   says.

18             Do you understand?

19             THE DEFENDANT:  I do.

20             THE COURT:  While not having any burden to prove you

21   are innocent, you also would have the right to call witnesses

22   and offer evidence of your own.  And if those witnesses or that

23   evidence wasn't available voluntarily, you would have access to

24   the Court's subpoena power to compel a witness to testify.

25             Do you understand?

1          THE DEFENDANT:  I do.

2          THE COURT:  And while you have the right to remain

3  silent, the right not to have to testify, you have the mirror

4  image right, the opposite right to take the witness stand in

5  your own defense if you wanted to do that.  That's your right.

6  Not your -- not your lawyer's right.

7          And so even if counsel warns you about the risks of

8  doing that -- like, for example, a prior felony conviction

9  might come into evidence for the jury to consider in deciding

10  whether to believe you -- in the end, it's your choice.

11          So if you wanted to testify, you would have the

12  absolute right to do that, to answer questions relevant to the

13  case but not just from your lawyer.  Also from the prosecutor,

14  who would have the right to cross-examine you.

15          Do you understand?

16          THE DEFENDANT:  Yes, I do.

17          THE COURT:  (Coughing.)  Pardon me.

18          So, pleading guilty means there won't be a trial.

19  I'll find you guilty and then the only question left is what

20  sentence will I impose on another day.

21          Do you understand?

22          THE DEFENDANT:  Yes, your Honor.

23          THE COURT:  Now, you have a plea agreement.  I want

24  to emphasize that agreement is with the prosecutor, the United

25  States Attorney's Office, and not the Court.

1    I'm not allowed to negotiate with you or to make you

2    any promises at all about what the outcome's going to be here

3    except to assure you that I will do my best to follow the law.

4    And that means I'm required to consider fairly and reasonably

5    all of the arguments you all bring to me; as well as a

6    recommendation of a probation officer; as well as the advice

7    that the sentencing guidelines laws provide, that grid.  And,

8    in the end, make a decision for myself what sentence would be

9    enough -- sufficient, they say -- but not greater than

10   necessary.  Not too much, to accomplish a number of purposes.

11   One, of course, is to punish criminal conduct that

12   warrants punishment.  One is to promote respect for the law, to

13   deter you from doing this again and others who hear about what

14   happened to you from engaging in the conduct.

15   I'm required to consider a sentence that would

16   promote public safety, and I'm required to consider your story,

17   your personal history and characteristics, the good in your

18   background that undoubtedly exists, as well as the path that

19   got you here in terms of criminal history and what your role

20   was.

21   And then I make a judgment.  What I determine is

22   enough but not too much.  Do you understand?

23   THE DEFENDANT:  I do, your Honor.

24   THE COURT:  Now, if that turns out to be different

25   from what you're asking for, what you and Mr. Barnett advocate

1   or what the prosecutor advocates, you're still guilty under

2   your guilty plea.  In other words, your plea -- your promise to

3   plead guilty to the prosecutor stands independent of the

4   Court's decision about what sentence to impose.

5            Do you understand?

6            THE DEFENDANT:  I do, your Honor.

7            THE COURT:  Most specifically, that means you can't

8   withdraw your guilty plea just because you don't like the

9   sentence.

10            Fair enough?

11            THE DEFENDANT:  Yes.

12            THE COURT:  Your plea agreement calls for you to give

13   up your right to appeal to a higher court the fact that I allow

14   you to plead guilty.  And, as long as I do not sentence you any

15   higher than the correctly calculated guideline range after the

16   appropriate required adjustments, then you can't even appeal

17   the length of the sentence.

18            Now, the correctly calculated guideline range starts

19   off pretty high because of the death factor.  And then there

20   are going to be some applicable reductions.  The acceptance of

21   responsibility, the minor role, the addition for the gun.

22            This chapter 5 discussion is not mandatory, so that

23   would not be included in the waiver of appeal issue.

24            Wherever you start before I start exercising

25   discretion, that's the level I would have to sentence you

1    higher than in order for you to be able to appeal any sentence.

2             Is that clear?

3             THE DEFENDANT:  Yes.

4             THE COURT:  Okay.  Now, the crime you're admitting

5    does have a five-year mandatory minimum there are options, as

6    has already been alluded to, for a judge to sentence below the

7    minimum.

8             If the door is opened through the prosecutor making a

9    motion or some other factor might apply, then I would have the

10   authority to go below the minimum.  It does not look like

11   safety valve would apply because there's a gun involved, at a

12   minimum.  So the only real option below the mandatory minimum

13   is the Government's motion.  If that happens, then I have the

14   authority to do what I think is appropriate.  More or less than

15   what the Government is seeking.  More or less than what you're

16   seeking.  But at least I have the authority to go below five

17   years.

18             Do you understand?

19             THE DEFENDANT:  I do, your Honor.

20             THE COURT:  The Government's promising not to ask for

21   any more than five years.  And that's subject to change, too,

22   in the sense that it might lean your way.  They promise not to

23   ever ask for more than 60 months.  But that theoretically

24   leaves open the door that they might ask for less.

25             THE DEFENDANT:  (Nods head.)

1      THE COURT:  No promises there though.

2      Do you understand?

3      THE DEFENDANT:  Yes, I do.

4      THE COURT:  And then you're free to -- as Ms. Bolstad

5  has emphasized -- ask for any lawful sentence.  Whatever you

6  all present, that I'm allowed to do, you are free to ask for.

7  But, of course, then the decision is ultimately left to me, and

8  you're not free to take back that plea.

9      I've made that clear, yes?

10     THE DEFENDANT:  Yes, I understand.

11     THE COURT:  Okay.  Did you understand the point about

12 restitution?

13     THE DEFENDANT:  I did, and I -- I'm -- I would like

14 to pay that as soon as possible.

15     THE COURT:  Sure.  There are co-defendants in the

16 case.  To the extent more than one person is held accountable

17 for the same restitution, that's called a joint and several

18 obligation.  Meaning that everybody owes it until the one

19 obligation is paid.  And if any one of you thought you paid

20 more than your fair share, you can go after the guy.  But it's

21 collectible, in theory, against everybody.

22     Do you understand?

23     MR. BARNETT:  And, your Honor, for the record, the

24 Court may have noticed a little bit of hesitation on her part.

25 The reason for that is -- I was going to bring it up at the

1    conclusion of this proceeding.

2              Ms. Godvin has asked me to ask the Government to be

3    able to provide her that information as soon as possible so

4    that she can make payments to the family as soon as possible.

5              THE COURT:  I'm certain Ms. Bolstad will initiate the

6    process, if it hasn't already been done, and get the

7    information to you.  You'll always have the -- you never

8    proceed to a hearing on the issue until you've had a fair

9    opportunity to know what it is and to ensure that you accept

10   it's accurate or to challenge it if you don't think it is.

11             MR. BARNETT:  I just mention it because there was a

12   hesitation on her part, and she looked over at me.

13             THE COURT:  Yes.

14             MR. BARNETT:  I promised I would bring the issue up.

15             THE COURT:  Very fine.

16             Ms. Godvin, do you have any cases pending other than

17   this one?  Any parole or probation supervision from the

18   prior --

19             THE DEFENDANT:  I'm on probation.

20             THE COURT:  All right.  In a minute, you're going to

21   admit to me that you committed a crime, evidently, while you've

22   been on probation.  That means it's an automatic violation of

23   the conditions of probation and the authority supervising that

24   can sanction you in a way that I don't have any authority to

25   control.

1          Do you understand that?

2          THE DEFENDANT:  I do.

3          THE COURT:  Are there any other cases pending against

4  you any other place?

5          THE DEFENDANT:  No.

6          THE COURT:  Has anyone promised you anything in

7  exchange for your guilty plea that's not written down in your

8  plea agreement and your plea petition?

9          THE DEFENDANT:  No.

10         THE COURT:  All right.  Did you read the plea

11 agreement in its entirety?

12         THE DEFENDANT:  I did.

13         THE COURT:  Did you read the plea petition in its

14 entirety?

15         THE DEFENDANT:  I did.

16         THE COURT:  Did you understand both of them?

17         THE DEFENDANT:  I did.

18         THE COURT:  And did you sign both of them?

19         THE DEFENDANT:  I did.

20         THE COURT:  All right.  You understand that the

21 maximum penalty for this offense is 40 years.  That sort of

22 sets the other bookend that the Court has to observe.  I don't

23 say that to frighten you but I am required to let you know that

24 I have the authority to impose a sentenced of up to 40 years if

25 I somehow thought that was reasonable.

1          Do you understand?

2          THE DEFENDANT:  I do.

3          THE COURT:  $100 mandatory statutory assessment has

4    to be paid, too.

5          Okay.  In your plea petition, at paragraph 24, it

6    says this.

7               "With respect to the charge to which I am pleading

8               guilty, I represent that I did the following acts

9               and that the following facts are true.  Beginning

10              in 2013 and continuing through April 2014, I

11              knowingly and willfully combined and conspired

12              with Shane Glenn Baker and Michael James Rosa to

13              distribute heroin, a Schedule I controlled

14              substance.  And the amount was 100 grams or more

15              of a mixture or a substance containing a

16              detectable amount of heroin."

17         Do you see that statement?

18         THE DEFENDANT:  I do.

19         THE COURT:  Do you understand every part of it?

20         THE DEFENDANT:  Yes.

21         THE COURT:  And is it true?

22         THE DEFENDANT:  It is, your Honor.

23         THE COURT:  So to combine or conspire, I want to be

24    sure you understand that that simply means you agreed.

25              You entered into an agreement with Baker and Rosa to

1    distribute heroin as indicated.

2              THE DEFENDANT:  Yes.

3              THE COURT:  Is that true?

4              And you knew what you were doing?

5              THE DEFENDANT:  Yes.

6              THE COURT:  You've confirmed that's your signature.

7              All right.  Go ahead and take a seat, please.

8              Ms. Bolstad will make a brief presentation,

9    Ms. Godvin.  Please listen.  She's going to summarize the

10   elements she would have to prove on the conspiracy count so

11   that a jury, if the jury heard the proof, could find you

12   guilty.

13             She's going to summarize, briefly, evidence she says

14   she has to support the charge.  If she says something you think

15   is wrong, new, different, anything that causes you concern, do

16   not plead guilty.  That will need to be clarified, if she is

17   saying something.  If you're satisfied with her presentation,

18   then I'll ask you to confirm that and then I'll ask you how you

19   plead to the charge.

20             All right.  Ms. Bolstad.

21             MS. BOLSTAD:  Thank you, your Honor.  The essential

22   elements of Count 3, conspiracy spanning 2013 through April

23   2014 in the District of Oregon are as follows:

24             First, the Government would have to prove that there

25   was an agreement between the defendant and others to distribute

1    heroin.

2        And that, second, defendant became a member of that

3    conspiracy, knowing of its purpose and intending to help

4    accomplish that purpose.

5        The Government would also have to prove beyond a

6    reasonable doubt that the amount of heroin involved in that

7    conspiracy exceeded 100 grams.

8        At trial, the Government would show that on March

9    29th, 2014, the Washington County interagency narcotic team

10    responded to an overdose death of 26 year old Justin Delong.

11        Detectives started working that case immediately.

12    They seized the victim's cell phone and started making

13    communications -- pretext communications with his apparent

14    source of supply, which turned out to be this defendant,

15    Ms. Godvin.

16        An autopsy conducted on Mr. Delong's body showed that

17    his death was caused by a heroin overdose.

18        So detectives making those text messages with

19    Ms. Godvin reached a deal with her for 1 gram of heroin for

20    approximately $80.

21        Those communications lead to the execution of a

22    search warrant at the residence Ms. Godvin was staying at on

23    Southeast 187th, apartment 128.

24        In that location, officers found heroin out in a

25    common area, a digital scale with heroin residue, a 9

1   millimeter pistol on the floor near the couch, an additional

2   safe in a bedroom belonging to Mr. Rosa, a loaded Smith &

3   Wesson 40 caliber firearm, 100 grams of heroin, addition

4   quantities -- distribution quantities of methamphetamine.

5          Mr. Rosa showed up during the execution of the search

6   warrant in a vehicle in which he had a lockbox with over $8500,

7   drug records, more heroin, and a digital scale.

8          Ms. Godvin was advised of her Miranda rights at the

9   scene.  She admitted to dealing to Mr. Delong the previous

10  evening.  She explained that she sold him those -- that heroin

11  from her own personal stash, which she obtains from her

12  roommate, Mr. Rosa.

13         She explained that she usually gets an eight-ball,

14  which is 3.5 grams per day.  She uses most of it herself, as

15  she has her own addiction to heroin, and she sells the rest.

16         Mr. Rosa also admitted dealing heroin and, with the

17  help of Mr. Rosa and Ms. Godvin, detectives continued working

18  up the chain to the other defendants.

19         THE COURT:  Thank you.

20         Counsel, anything to add to that?

21         MR. BARNETT:  No, your Honor.  It's an accurate

22  recitation.

23         THE COURT:  Ms. Godvin, are you satisfied with the

24  presentation?

25         THE DEFENDANT:  Yes.

1          THE COURT:  All right.  Do you understand the charge

2  in Count 3?

3          THE DEFENDANT:  I do.

4          THE COURT:  Do you want me to read it back to you,

5  as -- I'm happy to do that.  But if you don't want that, I'll

6  just refer to it by its title.

7          THE DEFENDANT:  No, that would be fine.  Thank you.

8          THE COURT:  How do you plead to Count 3?

9          THE DEFENDANT:  I plead guilty.

10          THE COURT:  Thank you.  I'm satisfied Ms. Godvin is

11  fully competent today.

12          She is making a knowing, intelligent, and voluntary

13  waiver of her rights.

14          I find her plea of guilty to Count 3, pursuant to

15  this plea agreement, is also knowing, intelligent, and

16  voluntary.

17          There is a factual basis for a finding of guilt I'm

18  now making beyond any reasonable doubt.

19          I assume the Government agrees that's sufficient to

20  support the plea?

21          MS. BOLSTAD:  Yes, your Honor.

22          THE COURT:  All right.  So the conviction on Count 3

23  is entered of record.  I'm ordering a presentence report.

24          I see that the clerk is forecasting July 8 at

25  10:00 a.m. for sentencing.

1          Has that cleared with you, Counsel?

2          MS. BOLSTAD:  (Nods head.)  That works for me.

3          THE COURT:  Yes?

4          MR. BARNETT:  And me as well.

5          THE COURT:  So, Ms. Godvin, what happens next is I'm

6    ordering a presentence report.  The Court's probation officers

7    will gather information about this offense, the others, and

8    you.

9          You'll have an opportunity to input to that report,

10   through Mr. Barnett.  If you want to be interviewed for the

11   report, you may be.  If you don't want to be, that's fine.

12   Nothing is held against you for not being interviewed.

13         Once that report is prepared by the Probation Office,

14   you all see it before I do.  It will give calculations for

15   guidelines applications.  It will make a recommendation.

16         If there are errors in it or things you want added to

17   it, there's a way to dialogue with the author before I ever see

18   it.  And then I'll see it once that process is finished.

19         Mr. Barnett will also write to me a letter or file a

20   memorandum that lays out what your position is about

21   sentencing, as will the prosecutor.

22         And then at the sentencing hearing, before any final

23   decision is made, you'll have an opportunity to address me

24   directly if you want to.  You don't have do.

25         Do you understand?

```
 1              THE DEFENDANT:  Yes, I do.

 2              THE COURT:  Okay.  Anything else, Ms. Bolstad?

 3              MS. BOLSTAD:  No, your Honor.  Thank you.

 4              THE COURT:  Counsel?

 5              MR. BARNETT:  Nothing for the defense.  Thank you.

 6              THE COURT:  All right.  Thanks very much, then.

 7   We're in recess on this matter.

 8              MR. BARNETT:  Actually, your Honor?  My apologies.

 9              THE COURT:  Yes.

10              MR. BARNETT:  My client has made an unusual request,

11   and we're hoping we can get some assistance from the Court on

12   this.

13              She's currently housed at MCIJ, Inverness Jail.  She

14   expresses to me that she has substantial concerns about the

15   amount of drugs that are available to inmates in there and

16   making it very difficult for her to maintain her sobriety, and

17   she is asking if perhaps there is a way that she can be

18   transferred to Columbia County.

19              THE COURT:  Well, let's do two things.

20              Ms. Bolstad, would you please contact the appropriate

21   authorities at that facility to express the concern about the

22   quantity of contraband in the building, without associating it

23   with this defendant.

24              MS. BOLSTAD:  (Nods head.)

25              THE COURT:  And indicate that it's at my request that
```

1    they look into this.  And then, secondly, I'll ask the United

2    States marshals if they can move the defendant, to promote her

3    sobriety.

4              THE MARSHAL:  Done.

5              THE DEFENDANT:  Thank you.  Thank you very much.

6              MR. BARNETT:  Thank you, your Honor.

7              THE COURT:  All right.  We're in recess.

8              MS. BOLSTAD:  Thank you, your Honor.

9              MR. BARNETT:  Thank you, Judge.

10              (Conclusion of proceedings.)

11

12                          --oOo--

13

14   I certify, by signing below, that the foregoing is a correct

15   stenographic transcript of the oral proceedings had in the

16   above-entitled matter this 2nd day of September, 2018.  A

17   transcript without an original signature or conformed signature

18   is not certified.  I further certify that the transcript fees

19   and format comply with those prescribed by the Court and the

20   Judicial Conference of the United States.

21              /S/ Amanda M. LeGore

22              _____

23              AMANDA M. LeGORE, RDR, CRR, CRC, FCRR, OCE

24

25